# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|                          |   |                      |                |
|--------------------------|---|----------------------|----------------|
| MARC E. APPLEWHITE,      | : |                      |                |
| Plaintiff,               | : | Civil Action No.:    | 09-0766 (RMU)  |
| v.                       | : | Re Document Nos.:    | 22, 24         |
| SHAMEKA BIVENS *et al.*, | : |                      |                |
| Defendants.              | : |                      |                |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter is before the court on the defendants' motion to dismiss or, in the alternative, for summary judgment. The *pro se* plaintiff, an incarcerated inmate, commenced this action under 42 U.S.C. § 1983, alleging that prison officials ignored his warnings that another inmate had threatened to harm him. The defendants argue, *inter alia*, that they are entitled to summary judgment because the plaintiff failed to exhaust his administrative remedies prior to commencing this action. For the reasons discussed below, the court awards summary judgment to the defendants.

## II. FACTUAL & PROCEDURAL BACKGROUND

At all times relevant to this action, the plaintiff was incarcerated at the Correctional Treatment Facility ("CTF"), a District of Columbia facility operated by the Corrections Corporation of America ("CCA"). *See generally* Compl. While incarcerated, the plaintiff had a job that allowed him access to the Internet. *Id.* at 1-2. According to the plaintiff, a fellow inmate

threatened to kill him if he did not "get on the internet and find a web[] site[.]" *Id.* at 2. The plaintiff's attempt to locate the website were unsuccessful and the inmate attempted to kill the plaintiff. *Id.* The plaintiff ultimately reported the threats to CCA staff, all of whom allegedly ignored the threats. *Id.* at 2-3. The plaintiff lost his job and was transferred to a different housing unit. *Id.* at 3. In addition, the defendants allegedly defamed the plaintiff by accusing him of accessing websites featuring gay pornography and of having sex in exchange for commissary. *Id.* The plaintiff demands damages of $20 million. *Id.*

On October 30, 2009, the defendants filed this motion to dismiss or, in the alternative, for summary judgment. *See generally* Defs.' Mot. to Dismiss or, in the Alternative, for Summ. J. ("Defs.' Mot."). In their motion, the defendants assert that the plaintiff failed to exhaust his administrative remedies as required by federal statute, failed to allege that he suffered an "actual injury" and failed to state a claim against certain defendants. *See generally id.* On November 2, 2009, the court issued an order advising the plaintiff that his failure to respond to the defendants' motion by November 30, 2009 could lead to the court grant the motion as conceded. Order (Nov. 2, 2009). The plaintiff, however, failed to file an opposition as directed.[1] Although the court could grant the defendants' motion as conceded, in the interests of explaining the substantive basis of the court's ruling to the *pro se* plaintiff, the court turns to the applicable legal standards and the arguments raised in the defendants' motion.[2]

---

[1] The plaintiff's sole submission following the court's November 2, 2009 order was a letter filed on January 15, 2010, which pertained to his demand for a jury trial and his request for a transfer to a correctional facility capable of addressing his medical and psychological needs. *See generally* Pl.'s Letter (Jan. 15, 2010).

[2] As discussed below, the plaintiff's failure to exhaust his administrative remedies, an affirmative defense properly raised in a summary judgment motion, is dispositive of his claims. *See infra* Part III.B. Accordingly, the court will not address the alternative arguments raised in the defendants' motion.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338

(D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### B. The Plaintiff Failed to Exhaust His Administrative Remedies as Required Prior to Commencing this Action

In their motion, the defendants assert that the plaintiff "failed to exhaust all administrative remedies available to him pursuant to 42 U.S.C. § 1997" prior to commencing this action. Defs.' Mot. at 1. For this reason, they argue, the complaint must be dismissed in its entirety. *Id.* at 6.

In relevant part, the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *accord Jones v. Bock*, 549 U.S. 199, 211 (2007) (observing that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). Exhaustion under the PLRA requires that a prisoner comply with all procedural rules, including filing deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001). "Even if an inmate believes that seeking administrative relief from the prison would be futile and even if the grievance system cannot offer the particular form of relief sought, the prisoner nevertheless must exhaust the available administrative process." *Kaemmerling v. Lappin*, 553 F.3d 669, 675 (D.C. Cir. 2008) (citing *Booth*, 532 U.S. at 739, 741 & n.6). If, on the

other hand, "'the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint,' then a prisoner is left with nothing to exhaust and the PLRA does not prevent the prisoner from bringing his or her claim directly to the district court." *Id.* (quoting *Booth*, 532 U.S. at 736). Typically, then, a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted the prison's administrative remedies. *Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001). "The failure to exhaust under the PLRA is not a jurisdictional bar, but operates as an affirmative defense," and therefore, "it is properly raised on a motion for summary judgment, where matters outside the pleadings are considered." *Plummer v. District of Columbia*, 596 F. Supp. 2d 70, 73 (D.D.C. 2009) (internal citation omitted).

In support of their motion, the defendants offer the declaration of Joyce Allen, the Facility Grievance Officer at CTF, who describes the administrative remedies the plaintiff was required to exhaust prior to commencing suit. *See generally* Defs.' Mot., Ex. 2 ("Allen Decl.").[3] According to Allen, CCA generally encourages inmates "to first submit an Inmate Request Slip or speak with any staff member" about their issue before initiating a formal grievance. *Id.* ¶ 9. If the inmate is dissatisfied with the response, he or she may initiate the formal grievance process, *id.*, the steps of which are described as follows:

    A.    Inmates must initially submit the Informal Resolution Form (Form 14-5A) to any staff member or Facility Grievance mailbox[] within seven (7) days of the alleged incident. The time for filing begins from the date the problem or incident became known to the inmate or resident. (Step One).

    B.    If the inmate is dissatisfied with the outcome of the informal resolution, an inmate may submit a formal grievance on Form 14-5B. Inmates must initially send grievances, on the CCA Inmate/Resident Grievance Form, to

---

[3] As Facility Grievance Officer at CTF, Allen's "responsibilities include [the] overall coordination of the grievance procedure at CTF," and maintenance of "all grievance records and documents, including the permanent grievance log." Allen Decl. ¶ 4.

> the Grievance Officer within five (5) days of receipt of a response to their Informal Resolution request. (Step Two).
>
> C. If the inmate finds the response unsatisfactory, he may appeal to the Warden within five (5) days of receipt of the Facility Grievance Officer's decision by completing the Request for Warden/Administrator Review portion of the Grievance Form. (Step Three).
>
> D. If the inmate is unsatisfied with the Warden's response, he may appeal to the District of Columbia Department of Corrections' Contract Monitor within five (5) days of receipt of the Warden's response. (Step Four).
>
> E. The inmate may then appeal the Contract Monitor's determination directly to the Director of the District of Columbia Department of Corrections within five (5) days of receipt of the Contract Monitor's decision. (Step Five).

*Id.*

As set forth in Allen's declaration, CTF's Informal Resolution Log for calendar year 2009 indicates that on April 10, 2009, the plaintiff submitted "one informal resolution . . . on Form 14-5A[,]" in which he asserted that "Defendants Bivens and Hatcher had mistreated him and discriminated against him because of his sexuality." *Id.* ¶¶ 12-13. Moreover, Allen states that CTF's Facility Grievance Log for calendar year 2009 indicates that the plaintiff did not file a formal grievance on Form 14-5B. *Id.* ¶¶ 14-15.[4] The plaintiff has presented nothing to indicate that he did, in fact, exhaust his administrative remedies as required. *See Eldridge v. District of Columbia*, 2002 WL 31898173, at *1 (D.C. Cir. Dec. 23, 2002) (per curiam) (affirming the dismissal without prejudice of an inmate's claims based on his failure to demonstrate that he had exhausted the D.C. Inmate Grievance Procedure before commencing the action), *cert. dismissed*, 539 U.S. 913 (2003); *Nickens v. District of Columbia*, 2010 WL 980569, at *4 (D.D.C. Mar. 17,

---

[4] Although there was a policy in effect at CTF permitting an inmate to report alleged sexual misconduct by either calling a sexual misconduct hotline, filing a grievance or verbally reporting an incident to a staff member, *id.* ¶ 7, the plaintiff did not avail himself of these alternative methods, *id.* ¶ 8. Nor did the plaintiff opt to file an emergency grievance, a procedure designed to address urgent matters in circumstances in which "compliance with the regular time guidelines would subject the grievant to risk of personal injury." *Id.* ¶ 11.

2010) (granting summary judgment for the District of Columbia because the inmate plaintiff had not exhausted the administrative remedies available to him at the D.C. Jail); *Banks v. York*, 515 F. Supp. 2d 89, 118-19 (D.D.C. 2007) (concluding that a former prisoner who had failed to complete all steps of the CCA's formal grievance procedure failed to exhaust his administrative remedies properly prior to filing his lawsuit).

In sum, the defendants have demonstrated that the plaintiff did not complete the inmate grievance process and the plaintiff has failed to rebut the defendants' showing. Because the plaintiff failed to exhaust his available administrative remedies prior to filing this civil action, the court grants the defendants' motion for summary judgment on all of the plaintiff's claims.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 9th day of June, 2010.

RICARDO M. URBINA
United States District Judge